GULF, C. & S. F. RY. CO. et al. v. MATHIS
et al. (No. 693.)

(Court of Civil Appeals of Texas. El Paso.
April 19, 1917. Rehearing Denied
May 10, 1917.)

1. CARRIERS ⊂⊃37—CARRIAGE OF GOODS—INTERSTATE SHIPMENT—FAILURE TO DELIVER.

Rev. St. 1911, art. 6559, providing penalties for refusal on the part of a railroad company to deliver freight upon the payment or tender of the freight charges as shown by the bill of lading, does not apply to an interstate shipment.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 95, 927.]

2. COMMERCE ⊂⊃33 — CARRIAGE OF GOODS — INTERSTATE SHIPMENT.

Where merchandise was shipped from Oklahoma to Ft. Worth, Tex., transportation to be continued to some other point in Texas thereafter to be determined, and there was no delivery at Ft. Worth, but delivery was made at the ultimate destination, Abilene, although the goods remained some time in Ft. Worth and were shipped on a new bill of lading to Abilene, the shipment from Ft. Worth to Abilene was an interstate shipment.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 26, 81.]

Appeal from Taylor County Court; E. M. Overshiner, Judge.

Action by John P. Mathis and others against the Gulf, Colorado & Sante Fé Railway Company and others. Judgment for plaintiffs, and defendants appeal. Reformed and affirmed.

J. M. Wagstaff, of Abilene, for appellants. D. M. Oldham, Jr., and W. D. Girand, both of Abilene, for appellees.

HIGGINS, J. Appellees, John P. Mathis and Hugh L. Ray, copartners, on July 1, 1915, shipped a stock of merchandise and certain furniture from Cushing, Okl., to themselves at Ft. Worth, Tex., over the line of the Atchison, Topeka & Santa Fé Railway Company. At the time of the shipment, a through bill of lading covering the same was issued, which described the same and gave its weight. When the shipment from Cushing was made, appellees expected to rebill the same at Ft. Worth to some point in Texas to be thereafter selected by them. The latter part of August, 1915, they decided to ship the merchandise and furniture to Abilene, Tex., and sell it at that point. In the meantime, the shipment remained in the warehouse of the railway company at Ft. Worth and was not taken out by appellees. While the shipment was in storage in the warehouse at Ft. Worth, appellees were seeking a place to which to reship and rebill the same. About August 23, 1915, they selected Abilene as the point to which they desired to reship the merchandise and furniture, and upon that date they reshipped the same to that place. The initial carrier of the shipment from Ft. Worth to Abilene was the Gulf, Colorado & Santa Fé Railway Company. It transported the same a part of the way, and then delivered the shipment to the Abilene & Southern Railway Company, which completed the transportation to Abilene. At the time of the reshipment at Ft. Worth, the Gulf, Colorado & Santa Fé Railway Company took up the original bills of lading which had been issued by the Atchison, Topeka & Santa Fé Railway Company and issued new bills of lading covering the shipment from Ft. Worth to Abilene. At the time of the reshipment, appellees and the agent of the railway company figured the amount due as transportation charges from Cushing to Ft. Worth and the storage charges which had accrued for storage in Ft. Worth, and found the same to be $128.92. Appellees then offered to pay same, and were informed by the railway agent that all charges could be paid when the shipment was delivered at Abilene. So those charges were not paid at Ft. Worth. Upon the bills of lading issued at Ft. Worth, the agent indorsed said sum of $128.92 as "advance charges for storage and freight." There was no notation upon the bills to show the amount of freight charges from Ft. Worth to Abilene. The bills had this indorsement:

"This bill of lading is given subject to correction as to rate, weight, classification, so as to conform to the rates, rules, and regulations prescribed by the Railroad Commission of Texas."

The amount of freight charges from Ft. Worth to Abilene, according to the weight of the shipment, classification, and rates of the Texas Railroad Commission, was $84.90. The bills also had this indorsement:

"Gulf, Colorado & Santa Fé Railway Company, straight bill of lading, original, not negotiable, for use only between points within the State of Texas, Fort Worth, Texas, 8/23/1915. Received from Mathis & Ray at Fort Worth, in apparent good order, the following packages consigned to Mathis & Ray, Abilene, Texas."

Here follows a description of the articles shipped showing the kinds and weight of each package.

Upon arrival at Abilene, the Abilene & Southern Railway Company demanded the payment of the aforesaid sums of money and an additional amount of $49.50. Appellees tendered $128.92, plus $84.90, or a total of $213.82, and demanded delivery of the shipment. The Abilene & Southern Railway Company refused to make delivery unless the additional sum of $49.50 be paid. A few days later, appellees paid the total amount demanded and received the shipment. The $49.50, however, was immediately refunded to them.

The foregoing is a condensed statement of the facts found by the trial judge (the case having been tried without a jury) and as disclosed by the admitted facts in the statement of facts. Other facts presented by the record are not material to a consideration of the case.

[1, 2] Appellees brought this suit to recover penalties under the provisions of article 6559, R. S., and for damages to the shipment while in transit from Ft. Worth to Abilene. Judgment in their favor was rendered for penalties in the sum of $424.50, and for damages in the sum of $57.50, from which the defendants prosecute this appeal. No question is made as to the item of $57.50. The item of $424.50 is not recoverable unless the shipment from Ft. Worth to Abilene was intrastate in nature. If the transportation between the points indicated was but part of an interstate shipment, then the statute noted can have no application. In determining the nature of the shipment, the case is governed by the rules announced in Houston, etc., v. Ins. Co., 89 Tex. 1, 32 S. W. 889, 30 L. R. A. 713, 59 Am. St. Rep. 17; and Railway Co. v. Wood-Hagenbarth Cattle Co., 105 Tex. 178, 146 S. W. 538. In the case last cited, a shipment of cattle moved from Valentine, Tex., to El Paso, Tex., over the Galveston, Harrisburg & San Antonio Railway Company; thence to Columbus, N. M., over the line of the El Paso Southwestern Railway Company. Separate contracts were made covering the two movements. The question to be determined was whether the shipment was interstate or intrastate. In deciding this question, Justice Phillips said:

"As to whether the movement of the cattle from Valentine to El Paso was an interstate or intrastate shipment must be determined by the following questions: What was the ultimate destination of the shipment at the time it was made? Though the ultimate destination may have been without the state, was there any break or interruption in the journey by any delivery

of the cattle by the carrier to the consignee at El Paso? If at the time the shipment originated its final destination was without the state, and it moved to such destination in a continuous and uninterrupted journey, unaccompanied by any delivery by the carrier to the consignee within the state, it was clearly an interstate shipment under the well-established rules of this court upon this subject. On the other hand, if there was a delivery of the cattle by the carrier to the consignee within the state, it was an intrastate shipment, notwithstanding it may have been the intention of the shipper at the time the shipment was made that it should be transported to a point without the state as its ultimate destination."

In the case at bar, Ft. Worth was not the ultimate destination of the shipment at the time it was made. It was not intended that transportation should terminate there, but that it should be continued to some other point in Texas to be thereafter determined. Nor was there any break or interruption of the journey by delivery at Ft. Worth. Delivery was not made until the intended ultimate destination was reached. The journey from Ft. Worth to Abilene was made in pursuance of the purpose of the shippers existing at the time the original shipment was made from Cushing. This case is distinguishable from Railway Company v. State, 97 Tex. 274, 78 S. W. 495. Its distinguishing characteristic is plainly indicated by Justice Phillips in the case from which we have quoted. Railway Co. v. Taylor, 103 Tex. 367, 126 S. W. 1117, 1200, and Railway Co. v. Nations, 136 S. W. 833, are likewise distinguishable in this: That actual delivery was made to the consignee at El Paso, the destination named in the bills of lading issued by the initial carriers. This distinguishing feature is also pointed out in the Wood-Hagenbarth Case. We hold the shipment to be interstate, and that the penalties are not recoverable.

Reformed, and judgment here rendered in favor of appellees for $57.50, with interest from the date of the judgment below.

Reformed and affirmed.