The Manufacturers - National Bank of Troy, Respondent, *v.* United States Fidelity and Guaranty Company, Appellant.

Third Department, November 11, 1926.

Insurance — indemnity insurance — action on banker's blanket bond — defendant agreed to indemnify plaintiff against " any loss  *  *  *  of money, currency, bullion  *  *  *  warrants  *  *  *  held by the Insured  *  *  *  as bailee  *  *  *  sustained  *  *  *  through *  *  *  misplacement or destruction "— plaintiff's customer left with plaintiff's assistant cashier subscription warrant for corporate bonds to be forwarded — cashier misplaced warrant and neglected to send same until too late — plaintiff paid customer his loss — bond covers money loss caused by misplacement of warrant until it became value-less — provision for determining value of securities does not limit bond to physical loss.

This is an action to recover on a banker's blanket bond given by the defendant to the plaintiff to indemnify it against " any loss  *  *  *  of money, currency, bullion  *  *  *  warrants  *  *  *  held by the Insured as collateral, or as bailee, trustee or agent  *  *  *  sustained by the Insured

**456** Manufacturers Nat. Bank *v.* United States F. & G. Co.

Third Department, November, 1926.          [Vol. 218]

* * * through robbery, * * * misplacement or destruction," and provided that the value of the securities should be determined by the average market value on the day preceding the discovery of the loss. Plaintiff's customer left with plaintiff's assistant cashier a subscription warrant which entitled the customer to subscribe to certain bonds of a corporation upon the payment of the value of the bonds. The assistant cashier agreed to forward the warrant with the necessary money, but misplaced the warrant and did not discover it until the morning of the last day on which the customer could subscribe for the bonds, when he sent the warrant to New York city with the necessary cash, · but it reached the office of the corporation too late for the customer to receive the benefit thereof. The plaintiff paid its customer the loss sustained.

The bond given by the defendant not only indemnified the plaintiff where there was a physical loss of securities, but is construed to indemnify the plaintiff against loss of money through the misplacement of securities by any of the employees of the plaintiff where the effect of such misplacement is to render valueless the securities so misplaced, and, therefore, the defendant must indemnify the plaintiff for the loss arising through the act of the plaintiff's assistant cashier in misplacing the subscription warrant.

The provision of the bond stating the method of determining the value of securities lost does not sustain defendant's contention that the bond covers only the physical loss of securities.

H. T. Kellogg, J., dissents, with memorandum.

Appeal by the defendant, United States Fidelity and Guaranty Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Rensselaer· on the 12th day of June, 1926, upon the decision of the court rendered after a trial at the Rensselaer Trial Term, a jury having been waived.

The question in this case is the construction of an indemnity insurance policy, called a bankers' blanket bond. The terms of the policy, excluding parts we deem unnecessary to the decision of this case, are as follows: The policy or bond, after reciting that each annual premium is based upon the total number of the insured's officers, clerks and others employees, continues: " The Underwriter hereby undertakes and agrees to indemnify the Insured and hold it harmless from and against any loss * * * of money, currency, bullion, bonds * * * warrants * * * promissory notes, checks or other similar securities, in which the Insured has a pecuniary interest, or held by the Insured as collateral, or as bailee, trustee or agent, and whether or not the Insured is liable therefor * * * sustained by the Insured * * * through robbery, * * * misplacement or destruction, whether effected * * * with or without negligence on the part of any of the employees while the property is actually within any of the Insured's offices covered hereunder * * *. The foregoing agreement is subject to the following conditions and limitations:  5. The value of any securities for the loss of which claim shall be made hereunder shall

be determined by the average market value of such securities on the day preceding the discovery of such loss.   *   *   * "

*William J. McArthur,* for the appellant.

*Murphy, Aldrich & Guy* [*Thomas H. Guy* and *John H. Broderick* of counsel], for the respondent.

VAN KIRK, J.   On or about January 4, 1926, and while defendant's blanket bond was in force, a customer of plaintiff was the owner of a subscription warrant, the value of which was an assured right to subscribe for bonds of the Brooklyn Union Gas Company. On that day he delivered such warrant, properly indorsed, to plaintiff's assistant cashier in its bank and instructed him to transmit it, together with the sum to be paid for the bonds, in due time to the National City Bank of New York city, the agent through whom his right must be exercised.   The time within which to exercise that right expired at three o'clock in the afternoon of January 15, 1926.   The assistant cashier, duly authorized to perform such service on the part of the bank, received the warrant. The bank had provided a security box, within which were compartments arranged for the safekeeping of outgoing business according to the time when action must be taken thereon; and it was the duty of the assistant cashier to place this subscription warrant in the proper compartment.   If he had done so the warrant would have been forwarded in the regular course of business in sufficient time to exercise the right conferred therein.   The assistant cashier, however, neglected to so deposit this warrant.   He laid it upon his desk; it became mixed with other papers and was misplaced. About eleven o'clock in the forenoon of January 15, 1926, the customer asked the assistant cashier if he had sent on his subscription warrant and told him that the time for exercising his right thereunder expired at three o'clock in the afternoon of that day.   The assistant cashier thereupon made search for the warrant and found it in a drawer of his desk among other papers.   He immediately sent it on to the National City Bank, where it arrived after its due hour and the right to subscribe was refused.   The value of the right to subscribe under this paper is admitted and the amount of the judgment is undisputed.   It is also admitted and found that the bank has paid to the customer, before this action was begun, the amount of the loss sustained by him.

Appellant's whole contention is that the only loss against which the defendant indemnified plaintiff was the physical loss of a specific kind of property named in the bond, and that the bond does not cover a money loss not actually due to the physical

**458**    Manufacturers Nat. Bank *v.* United States F. & G. Co.

Third Department, November, 1926.    [Vol. 218

permanent loss of specific property; that it does not cover a loss sustained by reason of a misplacement of a valuable paper named therein, which was found too late — when valueless.

We think this construction is too narrow. A reading of the policy suggests that the parties thereto intended that it should cover broadly losses which were sustained in consequence of the misplacement of any one of the securities or kinds of property named in the bond and which misplacement was due to the negligence of the officers and employees of the bank. That the bond is called a " blanket bond " has significance. The bond was drawn by the defendant company and it must receive a fair and reasonable construction, giving to its words and expressions their usual and expected meaning and in the light of the nature of the transaction. (*Kean* v. *National Surety Co.*, 241 N. Y. 252.) What then is the usual meaning of some of the words and expressions used? The bond secures against the loss of "money" and "currency." Currency is certainly money; it consists in common speech of coin, government notes and bank notes. But money means not currency only; it means wealth, capital, property. If money meant only currency there would be no reason for using the two words. In ordinary expression " loss of money " means " money loss." It is very common to hear the expression, he lost in such a deal; he lost money on such a security. Indeed the loss of a bond would occasion no loss if the bond had no money value; it is then but a souvenir of ill luck or folly. The loss of a bond is not confined to the physical loss of the paper on which it is printed; the obligation to pay gives the only value to the bond and when the valid obligation thereon is lost, the bond is lost. The meaning of " misplacement " cannot be questioned. It means " put in a wrong place." To place a subscription warrant where, in the accustomed way of work, it ought not to be, is a misplacement of the warrant. What else could the parties have thought the word meant? Misplacement of an article certainly does not contemplate a permanent loss of the article, as would happen in case of " destruction," a word used in the bond along with " misplacement." If a paper is misplaced it is lost by reason of misplacement until it is found and finding it does not establish that it was not lost while misplaced. The search for it might occasion a damaging delay. The bond covers misplacement while the property is actually within any of the insured's offices covered thereunder; the expression does not contemplate a permanent physical loss. Ordinary meanings of the word " through " are " by means of," " in consequence of " or " by reason of."

We think, *first*, that within the meaning of this bond the sub-

scription warrant was lost through, or in consequence of, misplacement, which in turn was due to the negligence of an employee; while so lost it became valueless; its life had expired; it was no longer a valuable piece of property; it was as if destroyed.  There was the actual loss of the warrant.  We think, *second,* that, giving the words of the bond their ordinary meaning, as applied to this particular case, the underwriter agreed in this " bankers' blanket bond " to indemnify the plaintiff against any " money loss," " loss of value," sustained in consequence of, or as the result of, the misplacement of the subscription warrant through the negligence of the assistant cashier while the property was actually within the insured's offices, even though the misplacement of the warrant be not considered the equivalent of its physical loss.

The condition that " the value of any securities for the loss of which claim shall be made hereunder shall be determined by the average market value of such securities on the day preceding the discovery of such loss " is referred to as sustaining appellant's contention.  In our view this " condition " was not added for the purpose of limiting the terms of the bond or of defining what was intended by the word " loss."  The key word in the condition is not " loss," but " value; " the words " for the loss of which claim shall be made " constitute merely a clause modifying and descriptive of the " securities " the value of which is to be determined.  This " condition " is confined to securities, the only kind of property named in the bond which has a constantly fluctuating value; because of that fact the other kinds of property are not mentioned.  Securities fluctuate in value from day to day.  Whether they are listed or over the counter securities, their sales are quoted in the financial sheets.  Their prices rise and fall as sales are made; the average of these selling prices shows the average market value of the security on a given day.  The value of a security for which a defendant is liable is always an important question and often a sharply contested one.  May a recovery be had for the highest price or the average price in order to fix market value?  And within what period of time is finding of the market price to be confined?  The parties here by this condition removed this vexed question from dispute and such was the one purpose of adding it.  If this condition limited the bond to cover physical loss only of property, we think there would be no meaning to the provisions of the bond which provide for indemnity against loss of money sustained by the insured through, or in consequence of, the misplacement of a valuable paper while it is actually within the insured's offices.  Let us take an illustration: One of the valuable papers named in the bond is a promissory note.  Assume that the maker is financially

irresponsible, in common speech is execution proof, and that the obligation of the indorser alone makes the note valuable. An employee of the bank misplaces this note, so that, when the time for protest arrives, it is not found, is lost, and the indorser is thus discharged of liability. The bank thereby suffers a money loss by reason of the misplacement of the promissory note through the negligence of an employee and while the note is still in the bank. In our view such a loss would come within the terms of this bond and would be a parallel of the loss in the present case. Or assume that a note, delivered to the bank for collection, is misplaced and so remains until the Statute of Limitations has run against it; is not the note lost, unless the indorser waives the statute?

The judgment should be affirmed, with costs.

All concur, except H. T. Kellogg, J., dissenting with an opinion.

H. J. Kellogg, J. (dissenting). Mr. Justice Van Kirk interprets the words " any loss  *  *  * of money " to mean any financial loss or any damage. That reading makes superfluous the words " currency, bullion, bonds, debentures, scrip, certificates, warrants, transfers, coupons, bills of exchange, promissory notes, checks or other similar securities " which follow the word " money." With these words omitted the bond would insure against " any loss  *  *  * of money  *  *  * through robbery, larceny (whether common law or statutory), burglary, theft, holdup, misplacement or destruction," and the precise meaning which Mr. Justice Van Kirk gives to the bond would be expressed. The words which he seeks to omit are present in the bond for some useful purpose. Of " currency," " bullion," " bonds," " scrip," " coupons," " warrants," etc., the only " loss " possible is a physical loss. " Loss," having been used in the sense of a concrete loss as to such items, cannot, in the same sentence, have been used to express an abstraction such as is signified by the words " deprivation " or " damage." Clearly the loss intended is the loss of a physical thing. This is conclusively shown by the following provision of the bond, viz.: " The value of any securities for the loss of which claim shall be made hereunder shall be determined by the average market value of such securities on the day preceding the discovery of such loss." I think there should be a reversal and dismissal.

Judgment affirmed, with costs.