The Manufacturers National Bank of Troy, Respondent, v. United States Fidelity and Guaranty Company, Appellant.

**Insurance — contract — insurance against loss of warrants through misplacement does not insure against loss occasioned by their misplacement — no recovery for loss arising from misplacement where, on search, warrant was quickly found.**

1. A policy of insurance against loss of warrants through misplacement does not insure against a loss occasioned by misplacement of a warrant. To bring the loss or damage within the policy the misplacement must result in a loss of the warrant, which is the risk insured against.

2. Where, therefore, a bank, through misplacement of a subscription warrant for bonds, failed to forward it in time, whereby the right to subscribe was lost, but upon attention being called to it, the warrant was almost immediately found, an action for the loss occasioned cannot be maintained upon a policy of insurance agreeing to indemnify the bank against loss of " warrants   *   *   *   through   *   *   *   misplacement or destruction."

*Manufacturers Nat. Bank* v. *U. S. Fidelity & Guaranty Co.*, 218 App. Div. 455, reversed.

(Argued February 25, 1927; decided March 29, 1927.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered November 16, 1926, affirming a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term, a jury having been waived.

*William J. McArthur* for appellant. The bond in question did not indemnify the bank against damages suffered by reason of misplacement. It only indemnified against the physical loss of specific property through robbery, larceny, misplacement, etc. (*Kean* v. *Nat. Surety Co.*, 241 N. Y. 252.)

*Thomas H. Guy* and *John H. Broderick* for respondent. The defendant indemnified plaintiff against any loss

through misplacement. The physical loss of the subscription warrant was not necessary to the plaintiff's recovery where the value of the warrant was destroyed through such misplacement. (*Van Vechten* v. *American Eagle Fire Ins. Co.*, 239 N. Y. 303.)

CRANE, J. Through the forgetfulness of the plaintiff's officer, a customer's securities were misplaced, resulting in a financial loss. The bank made good the loss, and in this action seeks to recover the amount thereof under an insurance policy issued by the defendant. Do the words of the policy cover such a case? Have the parties contracted for insurance against such an event? This appeal involves solely the meaning of the policy and an application of the clauses to the subsequent facts.

Before taking up these clauses of the policy, let us have the facts clearly before us. The bank's customer, Edward Murphy, had a subscription warrant entitling him to subscribe by reason of his stock ownership to a certain number of convertible debenture bonds. The warrant contained this provision:

" A stockholder desiring to exercise his right to subscribe represented by a Full Warrant, should sign one of the forms of subscription on the reverse side thereof, and return the same, so indorsed, to the said The National City Bank of New York, Transfer Department, No. 60 Wall Street, Borough of Manhattan, City of New York, not later than 3 o'clock p. m., January 15, 1926. * * *

" No subscription will be accepted unless the same shall have been received by the said bank at or before 3 o'clock p. m., on January 15, 1926, nor unless at least 40 per cent of the subscription be paid at such time."

In the early part of January, Murphy took the warrant, properly indorsed, to the Manufacturers National Bank of Troy, and gave it to Mr. Delaney, the assistant cashier, with instructions to forward it in accordance with

the above requirements.   The custom of the bank was to place such subscription warrants in certain compartments under certain dates, so that they would be taken out in time to be sent to the proper place.   It was apparently Delaney's duty, or practice, in other words, to put this warrant where it would not be forgotten or overlooked.   To classify these papers and securities in compartments was merely a method to prevent their being overlooked, a sort of reminder.   Delaney put the warrant on his desk and forgot it.   It subsequently was put in the drawer of his desk and overlooked until it was too late to secure for Murphy his subscription rights.   He lost thereby about $1,400, which the bank has made good.

In so far as the subscription warrant was not put in the compartment which the practice of the bank required, it was misplaced; that is, it was put in the wrong place. In no sense, however, was it lost, for the reason that as soon as Delaney's attention was called to it, he made a search and found it in five minutes.   He looked on the file, and then in his drawer.   Delaney lost recollection of the transaction, but neither he nor the bank lost the warrant.   There was a loss to the bank through the forgetfulness or carelessness of Delaney.   There was no loss resulting from a lost security or warrant.   More will be said by me on this point after we have consulted the wording of the policy.   That reads, so far as material:

" The Underwriter hereby undertakes and agrees to indemnify the Insured and hold it harmless from and against any loss, to an amount not exceeding Twenty-five thousand dollars ($25,000.00), of money, currency, bullion, bonds, debentures, scrip, certificates, warrants, transfers, coupons, bills of exchange, promissory notes, checks or other similar securities, in which the Insured has a pecuniary interest, or held by the Insured as collateral, or as bailee, trustee or agent, and whether or not the Insured is liable therefor (all of such money, currency, bullion, bonds, debentures, scrip, certificates,

warrants, transfers, coupons, bills of exchange, promissory notes, checks or other similar securities being hereinafter referred to as Property), sustained by the Insured subsequent to noon of the date hereof and while this bond is in force and discovered by the Insured subsequent to noon of the date hereof and prior to the expiration of twelve months after the termination of this bond as provided in Condition 11   *   *   *

" (B) Through robbery, larceny (whether common-law or statutory), burglary, theft, holdup, misplacement or destruction, whether effected with or without violence, or with or without negligence on the part of any of the Employees while the Property is actually within any of the Insured's offices covered hereunder.   *   *   *

" 5. The value of any securities for the loss of which claim shall be made hereunder shall be determined by the average market value of such securities on the day preceding the discovery of such loss.   If such securities have no quoted market value, their value shall be determined by agreement or by arbitration."

What is it that is covered by this policy?  It is the loss of a warrant; it is not a loss occurring through any or everything that may happen to a warrant.  The warrant must be lost.  The words are plain and cannot be read otherwise.  The underwriter undertakes to indemnify against any loss of warrants.  The warrant must be lost.  This loss must occur also in certain ways, provided in clause B, by robbery, larceny, burglary, theft, holdup, destruction or misplacement.

The defendant, therefore, contracted to insure against a loss caused by the *loss* of a warrant through misplacement; it did not contract to insure against a loss occasioned by misplacement.  Misplacement alone was not sufficient to bring the loss or damage within the policy.  The misplacement must result in a loss of the warrant; it is the loss of a warrant through misplacement which is the risk insured against.

What do these two words mean, therefore, if they must be coupled together, " loss " and " misplacement? " It is apparent at once that the loss of a warrant carries the idea of a permanent disappearance or destruction of it; of having gone for good from the possession of the holder or at least beyond recovery after careful search. Such a loss may occur through misplacement or through theft. Robbery, larceny, burglary, theft and holdup indicate a loss occasioned intentionally; misplacement and destruction may indicate an unintentional act, but the result, nevertheless, must be a loss of the instrument.

On the other hand, we find " misplacement " defined by the dictionaries as meaning to " put a thing in the wrong place, or to locate unsuitably."

This policy did not cover losses occasioned by putting a thing in the wrong place, or locating unsuitably. Something more was necessary to bring the facts within the contract; putting the warrant in the wrong place must have resulted in its loss, not merely in damage.

Applying these clauses of the policy to the acts of Delaney, we find that a loss to the bank was occasioned by Delaney's putting the warrant in the wrong place; putting it in his drawer instead of on the files or in the compartments, and then forgetting it. The warrant was misplaced; it was never lost; the loss to the bank was occasioned by a misplacement, but not by the loss of the warrant through misplacement. There is a vast difference.

Take the case of a customer who has left stock with the bank as collateral security. By reason of market conditions, he wants it at once, and demands it of the bank, paying his loan. It would be the duty of the bank to get it for him at once. The stock is in the vault, but there is some delay in finding it, due to improper filing or recording. The stock has been put in the wrong place, according to the regulations of the bank, and cannot be immediately procured. When it is found, some time later, the price of the stock has dropped; the customer

has suffered a loss for which the bank may be liable. The bank has suffered a loss through the misplacement of the stock, but the stock was never lost; it was with the bank among its securities, and required merely diligence and care in the search for it. This policy in question clearly would not cover such a loss, and yet the construction put upon it by the courts below would give it that effect. The policy was never intended to cover losses occasioned by forgetfulness or neglect of employees in temporarily misplacing securities.

A security may be lost through misplacement, when after careful and diligent search it cannot be found. A lost instrument is described as a paper which has been so mislaid that it cannot be found after diligent search. (Bouvier's Law Dictionary, vol. 2, p. 2051.) There is a great difference between a thing being mislaid which a diligent search will discover, and a thing being gone where ordinary vigilance will not regain it. (*State Savings Bank* v. *Buhl*, 129 Mich. 193.) We are quite familiar with the actions which have been brought upon lost instruments; also the rule which permits secondary evidence in the case of lost documents. Vigilant and reasonable search must be proved in order to establish the loss. The rule is that in establishing a lost instrument and seeking recovery thereon, the plaintiff must show that he has in good faith exhausted in a reasonable degree all the sources of information and means of discovery which the nature of the case would naturally suggest, and which were accessible to him. (*Rogers* v. *Durant*, 106 U. S. 644, 646; *Simpson & Co.* v. *Dall*, 70 U. S. 460; *Minor* v. *Tillotson*, 32 U. S. *99.)

Under section 75 of the Stock Corporation Law (Cons. Laws, ch. 59), an application may be made to the court for the issue of a new certificate of stock to replace one that is lost or destroyed. Proof has always been required of the loss, or that after due diligence it could not be found. (*Matter of Biglin* v. *Friendship Assn.*, 46 Hun, 223.)

If after careful, vigilant and reasonable search, the warrant in this case could not have been found, there might have been a loss from misplacement within the terms of this policy. The first search, however, revealed its whereabouts. There was consequently no loss.

We think, therefore, that this money loss of the bank was not occasioned by any act covered by the policy, and that the complaint should have been dismissed.

The judgments below should be reversed, and the complaint dismissed, with costs in all courts.

POUND, J. (dissenting). I dissent on the ground that the warrant, at the time it should have been sent to New York, was lost by misplacement within the meaning of the policy.

CARDOZO, Ch. J., ANDREWS and LEHMAN, JJ., concur with CRANE, J.; POUND, J., dissents in memorandum; O'BRIEN, J., dissents on opinion of VAN KIRK, J., below; KELLOGG, J., not sitting.

Judgment accordingly.