THE NEW YORK TRUST COMPANY, Plaintiff, *v.* ROYAL INDEMNITY COMPANY, Defendant.

First Department, November 6, 1931.

*Chester Bordeau* of counsel [*White & Case*, attorneys], for the plaintiff.

*Barnett Cohen* [*Nathaniel Wheeler* with him on the brief], for the defendant.

McAVOY, J. On the 12th day of October, 1923, defendant executed and delivered to plaintiff its "Bankers' Blanket Bond," which was alleged to have been in effect during the times mentioned in the submission. The defendant undertook, according to the bond, to indemnify the plaintiff "from and against any losses sustained by the insured" prior to its termination. The bond contained coverage for losses sustained under certain contingencies. The insuring clause is as follows: "(B) Any loss of money, cur-

rency, bullion, bonds, debentures, scrip, certificates, warrants, transfers, coupons, bills of exchange, promissory notes, checks or other similar securities, in which the Insured has a pecuniary interest, or which are held by the Insured as collateral or as bailee, trustee, custodian, agent, or in any other capacity, and whether or not the Insured is liable therefor (all of such money, currency, bullion, bonds, debentures, scrip, certificates, warrants, transfers, coupons, bills of exchange, promissory notes, checks, or other similar securities being hereinafter referred to as Property), through robbery, larceny (whether common-law or statutory), burglary, theft, hold-up, misplacement, or destruction, whether effected with or without violence or with or without negligence on the part of any of the Employees, while the Property is within any of the Insured's offices covered hereunder, or within any recognized places of safe deposit within the United States, or within the premises of any of the Insured's bankers, or lodged or deposited by the Insured in the ordinary course of business for exchange, conversion or registration with the issuers thereof or with any agents of such issuers, or with any persons employed to procure or manage the exchange, conversion or registration thereof."

Plaintiff was the common stock transfer agent for Warner Bros. Pictures, Inc. On the 6th of December, 1928, plaintiff, as such transfer agent, issued three certificates, each for 100 shares of the common stock of that corporation, as follows:

| Certificate number. | Stockholder. |
| --- | --- |
| C 11583 | Elwin C. MacBride |
| C 11584 | Elwin C. MacBride |
| C 11585 | W. Eric Cronon. |

These certificates were credited by plaintiff on the stock books of the "picture corporation."

These certificates, upon May 1, 1929, were presented to the plaintiff for transfer. A "typist employed by the plaintiff prepared the transfer report for that day in connection with the common stock of Warner Bros. Pictures, Inc." This report showed that these three certificates were "charged to and cancelled from the account of Elwin C. MacBride." The report should have shown only the first two numbered certificates "as charged to and cancelled from" his account. It should have shown the last numbered certificate "as charged to and cancelled from the account of W. Eric Cronon." In the regular course of business, this typist delivered said report "to a bookkeeper employed by the plaintiff." He debited the account of Elwin C. MacBride with 300 instead of 200 shares of stock.

The record then showed that there were 100 shares to the credit of W. Eric Cronon. "Said account should not have had any credit whatever." So, too, the account of Elwin C. MacBride was short 100 shares of the stock.

This condition continued to exist upon the 27th day of June, 1929. On that day "Warner Bros. Pictures, Inc., pursuant to provisions in its certificate of incorporation, issued additional stock on the basis of one share of common stock for each share of common stock outstanding to the holders of record of common stock as of the close of business on that day."

Amongst others, plaintiff, as transfer agent, issued for distribution, certificate No. AC 9464 for 100 shares of stock of the picture corporation "to the holders of record of common stock as of the close of business on June 27, 1929." This certificate was duly mailed by an employee of the plaintiff to W. Eric Cronon and was received by him. Cronon in good faith and in the belief that he was lawfully entitled thereto, delivered such certificate "to his broker, duly endorsed in blank, as collateral for a margin account." Cronon was unable to cover his account with the broker, and the certificate subsequently became the property of the broker.

To make delivery to Elwin C. MacBride of 100 shares, plaintiff, upon the 19th day of November, 1929, purchased an equal number of shares for $4,090. Of this sum it has received from Cronon $1,090 and a note for the balance which Cronon failed to pay upon presentation. The acceptance of this payment and the note do not, however, affect "the obligations, if any, of the defendant under" its bond.

This controversy is submitted because of the failure of the parties to agree upon whether the bond, under the stipulated facts, covers the loss sustained by the plaintiff.

The defendant undertook and agreed to indemnify the plaintiff and hold it harmless for loss of certain species of "property." "Property" includes certificates of stock. Such "property" to be covered (in so far as material to the controversy) must be lost through "misplacement * * * while the Property is within any of the Insured's offices covered hereunder."

The question presented is whether, under the facts stipulated, there has been a "misplacement" of any property as described in the bond "on the premises of the plaintiff" resulting in the loss of that property.

Plaintiff contends that the act initiated by plaintiff's typist in error, resulting in plaintiff's clerk mailing to Cronon the stock dividend certificate belonging to MacBride, amounted to a misplacement of that certificate on the plaintiff's premises, occasioning

a loss to the plaintiff. It is argued that the wrongful placing of the certificate in the envelope, following the errors committed by the plaintiff's employees, resulted in the loss of the certificate, and that the acts of plaintiff's employees in mailing amounted to a misplacement resulting in loss.

Defendant contends that the language of the "blanket bond" contemplates the physical loss of the certificate within the office of the insured, and that the fact that it was sent to Cronon through error may not be said to be a misplacement in the office of the plaintiff, nor a loss in the said office; that the certificate at all times could have been located while in the office; that it may not be said that it was lost in the office because it should not have been made out and mailed to Cronon; that it is a physical loss of the certificate in the office to which indemnity extends, not a loss through improperly issuing or forwarding the certificate from the office.

Upon the discovery of the error in the accounts of the two customers, plaintiff was aware how the loss occurred and where the certificate was, and that it was never lost while in its office.

It is further contended by the defendant that the certificate could not be said to have been lost through misplacement. Loss through misplacement may only occur through an actual physical loss. The damage has occurred through improper forwarding or listing, but that is not enough. Under the terms of the bond, unless the certificate cannot be located, indemnity does not arise.

Defendant contracted to insure against a *loss* caused by the "loss of the certificate through misplacement." Misplacement alone would not bring the damage or loss within the terms of the bond. The loss of the certificate through a misplacement in the office is the risk against which insurance runs. While the plaintiff knows where the certificate is it has not been misplaced. Although plaintiff cannot repossess itself of the certificate, under no definition could it be said to have been misplaced. The loss resulted through mistakes on the part of the employees, but the bond does not run as indemnity against those mistakes. While there was a loss to the plaintiff through the carelessness or negligence of the employees, the loss did not arise or result from a lost or misplaced certificate. Consequently the terms of the bond not insuring against the loss which is set out in the submission, there can be no recovery on the bond, and the judgment should go for defendant.

FINCH, P. J., MERRELL, MARTIN and SHERMAN, JJ., concur.

Judgment directed for defendant. Settle order on notice.