## MILES v. UNITED SERVICES AUTOMOBILE ASS'N.

### No. 4055.

Court of Civil Appeals of Texas. El Paso.
Feb. 27, 1941.

Rehearing Denied March 20, 1941.

234

Claud J. Carter, of San Antonio, for appellant.

Max H. Wier and Trueheart, McMillan & Russell, all of San Antonio, for appellee.

SUTTON, Justice.

This is an appeal from one of the District Courts of Bexar County. The parties will be designated here as in the trial court.

The plaintiff, Alfred Hart Miles, sued the defendant, United Services Automobile Association, a reciprocal insurance exchange, under the laws of Texas, with its principal ,place of business at Fort Sam Houston, Texas, to recover damages in the sum of $1,569.70 on what is described as a "Government Service Policy." The trial was to a jury. At the conclusion of all the testimony the trial court instructed a verdict for the defendant and rendered judg-

ment for it. From that judgment the plaintiff has perfected this appeal.

'Plaintiff was a retired naval officer and his wife was a granddaughter of President John Tyler, the tenth President of the United States. Plaintiff delivered three trunks, one box and one crate of files to the Naval Government Transport Antares, at San Pedro, California, to be transported to the Naval Base at Norfolk, Virginia. The trunks and boxes contained a large number of articles of bed and table linens and covers; many separate articles of wearing apparel; photographs and souvenirs, including ivory, hand-painted miniatures of President John Tyler and his wife. The scuppers (gutters and drain pipes) of the ship became choked and stopped up. While the boat was passing through the Canal Zone, it was caught in very heavy rains. The 'water backed up into the Lieutenant's Storage Room on the second deck aft on the port side, where the trunks and boxes were placed for shipment, to a depth of some eighteen inches. The property remained in the water for some thirty days, and all of it was largely ruined. The plaintiff alleged the usual, customary and proper place for such property while being thus transported was in the holds of the boat, and had it been so placed it could not have been damaged as it was; that it was misplaced in the Lieutenant's Storage Room and hence the damage and loss.

It was agreed on the trial that the plaintiff's property was transported and damaged in the manner and to the extent claimed by him.

The defendant defended and sought to avoid liability on two grounds: (1) That the coverage clause of its policy did not cover the character of loss and damage sustained by the plaintiff; and (2) that the placing of the property in the Lieutenant's Storage Room was not a misplacement of it during the shipment but was a usual, customary, proper and safe place when there was no room in the holds of the ship for it.

The coverage clause of the policy is as follows: "Subject to the exclusions hereinafter set out, this policy insures the subscriber * * * against destruction of or damage to the property described in the insuring clause hereof, arising as a result of Fire and/or Lightning, and loss arising as a result of the following named hazards of Transportation: (Transportation Defined.) Loss resulting from the loss, misshipment or misplacement of boxes during

the shipment and/or loss resulting from the stranding, burning, sinking, collision or derailment of the carrier upon which the insured goods are being transported."

Plaintiff presents seven assignments of error, but the substance of them all is that the court erred in instructing the verdict and rendering the judgment against him based upon the court's construction of the contract. In this we think plaintiff is correct.

The differences arising between the plaintiff and the defendant and the determination of this appeal depend upon the construction of these words found in the above quoted coverage clause: "Loss resulting from the loss, misshipment or misplacement of boxes during the shipment."

■ The defendant briefs two counter propositions, and in those it asserts that the unambiguous coverage clause: "Loss resulting from the * * * misplacement of boxes during the shipment," in the policy protects only against the physical loss of the property; that is, that before the plaintiff is entitled to recover under the terms of this policy, he must show that the goods were entirely and permanently lost to him to the extent that they could not be found. This construction substitutes for the words "misshipment" and "misplacement" the word "loss." In other words, it calls for a repetition of the word "loss" three times, and limits its liability for the physical and permanent loss of the property. If this were true, then the use of the words "misshipment or misplacement of boxes during the shipment" is wholly unnecessary and superfluous. Had it been the intention and purpose to insure only against loss, then the only language necessary to use would have been "loss resulting from the loss." The first use of the word "loss" in this clause is synonymous with damage or injury, the three words meaning the same thing. Webster's newest International Dictionary gives damage and injury as the synonyms for loss. Among the insurance fraternity the word "loss" is used to describe injury, damage, etc., to property or persons injured; whereas, in railway parlance, the word "damage" is used to describe injury or loss to property; and in industrial insurance an injury done to persons, the word "injury" is employed to describe loss or damage. We have been unable to find any better definition than that given by Webster's New International Dictionary for "loss," which is: "Destruc-

tion of or damage to the subject insured; or the death or injury of an insured person by the perils insured against in such a manner as to charge the insurer with a liability under the terms of the policy."

The losses are classified as total, partial, and constructive total.

He defines the word "misplace" thus: "To put in the wrong place or position, to mislocate."

The plaintiff cites no case involving the misplacement of property in transit.

The defendant in its brief says a careful search of the authorities has revealed two cases in which the courts have construed insurance policies containing a clause covering loss through misplacement, and cites Manufacturers' Nat. Bank v. United States F. & G. Co., 245 N.Y. 55, 156 N.E. 94, and New York Trust Co. v. Royal Indemnity Co., 233 App.Div. 408, 253 N.Y.S. 154.

In the first case cited there was a loss to the Bank because one of its officers temporarily misplaced a customer's subscription warrant so that the customer's right to subscribe to certain bonds lapsed. The second case was apparently covered by a similar policy.

We have found another case between the same parties involving the misplacement of another customer's subscription warrant to the same bonds, and with the same result. Manufacturers' Nat. Bank v. United States F. & G. Co., 218 App.Div. 455, 218 N.Y.S. 332.

In the first case cited by the defendant a divided court, in which four concurred in the judgment rendered, three dissented, and one did not sit, held in effect that before the Bank was entitled to recover it must show a permanent physical loss of the instrument, and that the mere misplacement of it temporarily was not sufficient.

In the case found by us, supra, the court held, with one Judge dissenting, that the misplacement of the subscription warrant and the discovery of it after it became worthless was a loss of the instrument within the meaning of the policy, and therefore permitted a recovery.

The holding in the last case cited by the defendant was the same as in the first.

Each of these three cases, however, is wholly different from the case here under consideration. The coverage clause in the cases cited is as follows: "The underwriter hereby undertakes and agrees to

indemnify the insured and hold it harmless from and against any loss * * * of money, * * * certificates, warrants, * * * through robbery, larceny (whether common-law or statutory), burglary, theft, holdup, misplacement, * * *."

The word "misplacement," as used here, we think, is synonymous with "loss." In any event, the undertaking was to insure against the loss of property through any of the means enumerated.

In the first case cited by the defendant the court there defines "misplacement" to mean "to put a thing in the wrong place, or to locate unsuitedly."

In the case cited by us in 218 N.Y.S. 332, at page 334, par. 2, the Court says: "The meaning of 'misplacement' cannot be questioned. It means 'put in a wrong place.'"

These definitions are essentially that given by Webster, and are the meanings that are commonly and ordinarily given the term.

The plaintiff in his petition pleaded the whole of the insurance contract, but specifically pleaded his damage, loss or injury under this provision: "Misplacement of boxes during the shipment."

We regard the language of the coverage clause altogether unambiguous, and think the last quoted language covers the loss, injury or damage sustained by the plaintiff.

■ A well known rule of construction applicable to insurance policies, and one which requires the citation of no authority, is, if the language be clear and unambiguous, the words used will be given the usual and ordinary meaning; but if ambiguous and difficult of construction, you may look to the situation of the parties at the time, and the contract will be liberally construed in favor of the insured and against the insurer. Commercial Standard Ins. Co. v. McKinney, Tex.Civ.App., 114 S.W.2d 338; Metropolitan Life Ins. Co. v. Wilson, Tex. Civ.App., 102 S.W.2d 454; National Surety Co. v. Chalkley, Tex.Civ.App., 260 S.W. 216; State Life Ins. Co. v. Barnes, Tex. Civ.App., 58 S.W.2d 189; Bergholm v. Peoria Life Insurance Co., 284 U.S. 489, 52 S.Ct. 230, 76 L.Ed. 416.

■ It has also been held that where the language is susceptible of two constructions, the construction most favorable to the insured will be adopted. Standard Accident Ins. Co. v. Cherry, Tex.Civ.App., 48 S.W.2d 755, writ refused; American Natl.

Ins. Co. v. Jones, Tex.Civ.App., 83 S.W.2d 428, writ refused.

If we should, therefore, be mistaken in our conclusion that this language is unambiguous, these rules, nevertheless, cover the situation.

■ This was a "Government Service Policy." We take it the defendant's principal source of business is from those in the Government service and who ship their belongings by Government transport, and therefore have no protection, because of the absence of liability on the part of the Government. The purpose of such shippers is apparent—to get the protection the ordinary shipper has in the usual liability of a common carrier for loss, injury or damage to property sustained in transit. If an insurer with this defendant be limited to a total, physical and permanent loss of his property, and if that is a proper construction of this coverage clause, there would be little incentive for taking it, and its business would soon, we anticipate, drop very low.

It necessarily follows from what has already been said that we have reached the conclusion the case must be reversed. With a degree of reluctance, we have concluded, under the facts and circumstances here, the question of whether or not the Lieutenant's storage room was a wrong place, and the property, therefore, misplaced during the shipment, is one of fact for the jury.

The plaintiff testified in the case that he had been a naval officer from 1907 to 1935, and had had long experience on Government transports such as the Antares, and that he had never in all of his experience known property of this kind and character to be placed in the Lieutenant's storage compartment, or in any place other than the hold of the boat, and that had they been so placed, his goods could not have sustained the damage in the manner as they did; that in the hold they could not have been damaged except through the stranding, burning, or sinking of the boat. Of course, there is no question as to that manner of injury. On the other hand, Commander Hoffecker, of the transport Antares, testified in the second deposition that there was no space available in the cargo holds of the ship for the articles belonging to Commander Miles, and that by reason thereof they were placed in the Lieutenant's storage compartment, and that such place was the usual and customary

place to put them when the cargo holds were full; that the place was a reasonably safe place to put them.

Under these circumstances, we have concluded the case should be reversed and remanded .for a new trial, and it is so ordered.