**PIPER, STILES & LADD et al., Appellants,**

v.

**FIDELITY AND DEPOSIT COMPANY
OF MARYLAND, Appellee.**

No. 15376.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

Nov. 21, 1968.

Rehearing Denied Jan. 9, 1969.

See also Tex.Civ.App., 408 S.W.2d 800.

House, Mercer, House & Brock, R. L. House, San Antonio, for appellants.

Fulbright, Crooker, Freeman, Bates & Jaworski, Russell Talbott, Houston, for appellee.

COLEMAN, Justice.

This suit was brought by Fidelity and Deposit Company of Maryland, appellee,

against Piper, Stiles & Ladd, Charles F. Ladd and Lola Ladd, appellants, for premiums on bonds alleged to be due to appellee from appellants by reason of a written contract between said parties, dated January 1, 1962, which contract provided that the "agent" (Piper, Stiles & Ladd) "shall be responsible for the payment of original premiums upon all bonds * * * written through the agent."

The case was tried before a jury. Both parties filed motions for instructed verdicts, based in part on the premise that the contract was unambiguous; the court refused both motions and submitted the case to the jury. Based on the verdict of the jury and the evidence, the court entered judgment for appellee in the amount of $8,108.74, together with interest and costs.

The principal point on which appellants base their appeal is that the trial court erred in failing to sustain their motion for an instructed verdict for the reason that the undisputed evidence established that premiums for which suit was brought were for bonds not "written through the agent".

In the petition on which appellee went to trial recovery was sought for the original premiums due on three bonds issued by appellee to Martin Brothers General Contractors, Inc., and for the premium due on one bond issued to Jean T. Stitt, liability for which appellants admitted. It is agreed that these bonds were written by appellee pursuant to an application made by Sam Martin, an agent of the corporation, directly to appellee at its San Antonio office. There is no evidence that in these instances Mr. Martin discussed the bonds with appellants, or any of its sub-agents or brokers, prior to the issuance of the bonds. Two of these bonds were dated February 4, 1965, and the other was for an overrun on a contract for which a bond had been issued February 5, 1962. Thereafter appellee included these bond premiums in bills to appellants. Appellants

rendered monthly statements to appellee showing the premiums on these bonds due to appellee from appellants. Appellants billed Martin Brothers General Contractors, Inc. for the premiums, but did not collect from Martin Brothers and did not pay appellee.

Over the objection of appellants that any contract between appellee and appellants prior to the current contract would be irrelevant and immaterial, appellee introduced into evidence the agency contract entered into in 1954, which was identical to the present contract with the exception of the percentage of commissions to be paid to appellants. Appellee proved that appellants were an agent of Fidelity and Deposit Company of Maryland for some years prior to 1954 continuously to the dates of the occurrences on which this suit was brought. Appellee proved that there were no oral or written changes negotiated between the parties in the terms of the 1962 contract.

Mrs. Lola Ladd, a partner in the agency, testified in response to questions by the attorney for appellee, that Sam Martin first started doing business with the agency either in 1953 or 1954. In 1955 he wanted to secure a contract bond as surety and came to the agency for that purpose. A secretary working for the agency directed him to appellee, and appellee executed the bond he desired. Thereafter for a period of nearly ten years Martin Brothers General Contractors, Inc., or one of its predecessor companies, individuals or partnerships, went to appellee in the San Antonio office and obtained many bid bonds and performance bonds from them. On each of those bonds appellee sent the agency a premium billing similar to those introduced into evidence in this case, and, after receiving such premium billing the agency rendered its monthly account, or account current, to appellee showing as premiums due appellee those premiums on which they had received such a billing, less 30% due to the agency as commissions.

Mrs. Ladd further testified that the agency paid appellee the net premiums on all of the bonds that it collected from Sam Martin or Martin Brothers or subsidiary or affiliated companies, but that there were some bonds written for which the agency did not collect the premiums and "those bond premiums were sent back as uncollectible to the Fidelity and Deposit Company." Mrs. Ladd identified a number of such bonds written by appellee for the Martin Companies and testified that the agency received a commission of 30% of the premium on each of such bonds, and that all of these bonds were written based on applications made by Martin Brothers direct to appellee's San Antonio branch office and that the agency did not know that the bonds were written until it received the billing. She testified that in each case the agency received premium billings from appellee, rendered accounts current showing the amounts of those premiums and the agency's commissions, billed Martin Brothers, and, after the premium was collected from Martin Brothers, remitted to appellee its portion of the premium. She testified that the procedure followed in these instances was the same as that followed in the case of the three items involved in this suit except that they were not able to collect these premiums from Martin Brothers and rendered them back to the company as uncollectible items.

Appellants were not authorized under its power of attorney with appellee to execute contract bonds in excess of a certain amount, and, even in those cases, had to secure appellee's prior approval. Mrs. Ladd testified that the Martin Brothers business was an agency account handled by the agency on all matters except for the contract bonds, and that the agency handled a great deal of insurance for them including liability insurance, workmen's compensation insurance, automobile insurance, fire and windstorm insurance, and equipment floaters.

The attorney for appellee stipulated that Mrs. Ladd did not have anything to do with writing the bonds with which this case is concerned and didn't know they were written until March of 1965.

Mrs. Ladd was asked by her lawyer if she knew how many of the bonds, about which she had been questioned by appellee's attorney, written over the period of years, were turned back and the company stood the loss. Appellee's attorney objected that "the contract itself is plain, unambiguous, speaks on the question of the liability for these premiums and that no amount of custom, practice or activities of the parties in the past can affect the plain and unambiguous terms of the contract, * * *"

Thereafter Mrs. Ladd testified that neither she nor the agency had anything to do with the writing of the three bonds involved in this suit; that the company had stood the loss on other contract bonds, and that the agency had not where the party securing the bond went directly to the company. On cross-examination, however, she testified that, with one exception, the agency had collected all premiums on payment or performance bonds, and that the exception was a claimed overrun, but that the contractor contended that the additional work was not performed under the bonded contract. No further attempt was made to produce evidence as to the custom and practice of handling items other than contract bonds.

Sam Martin testified that his first contact with appellee was in 1955. He went to appellant for a bid bond and a secretary arranged an appointment for him with an employee of appellee. After checking his references appellee wrote the bid bond. Thereafter he dealt directly with appellee on bid bonds and later performance and payment bonds. Mr. Martin identified the application for a performance bond and the bond subsequently issued, being bond number 5645004, one of the bonds involved in

this controversy. These instruments were admitted into evidence. He testified that he did not know whether there was an application for bond No. 5645032 because he frequently signed application forms in blank at appellee's office and they would fill in the blanks with the necessary information when he went over to get a bond. He testified that he did not remember any time that he went to appellants for a bid bond or a bond. He identified a list of jobs which he did for which bonds were furnished by appellee, and testified that he did not know that appellants billed his companies for the premiums.

By the agency contract between the parties, appellee authorized appellants, "but not exclusively", to receive applications for certain bonds and insurance policies in San Antonio, Texas and vicinity and to "collect, receive and recipt for premiums on bonds and policies tendered by the agent to and accepted by the company and to retain out of premiums so collected as full compensation on business so placed with the company commissions at the following rates." The rates on the bonds and insurance policies were set out, including a rate for contract bonds.

The company, appellee, reserved the right to accept business on risks, "attaching in but submitted by agents or brokers located outside of the territory specified," and to determine the commission, if any, to be allowed the agent on such business.

The provision specifically to be construed reads:

"Sixth—The agent shall be responsible for the payment of original premiums upon all bonds and policies written and of all annual, renewal and continuation premiums on all cancelable bonds and policies written through the agent or any of the sub-agents or brokers of the agent, and shall remit for the same to the Houston Branch Office *office* of the Company as hereinafter provided.

The Company agrees to allow the agent full returned premium for each Burglary or Glass policy, renewal or continuation returned to it provided the agent is unable to collect the premium thereon; * * *"

The "Application for Performance and Payment Bonds and Indemnity Agreement" executed by Martin Brothers in connection with bond number 5645004 contained an agreement that Martin Brothers would pay to appellee a premium in the sum of $9,294.00, and also provided: "The Sureties will pay commission on said premium for said bonds to such brokers or agents as the applicants may designate as their brokers or agents." This was a printed form setting out in detail the rights and liabilities of the parties.

In the leading case of Lewis v. East Texas Finance Co., 136 Tex. 149, 146 S.W. 2d 977 (1941), the court announced certain rules of law:

"(a) When parties have reduced their contract to writing, and the terms and conditions of the written instrument are expressed without uncertainty as to the subject matter and nature of the contract, the writing is presumed to contain the whole of the agreement, and contemporaneous parol evidence is not admissible to contradict or vary the terms of the written instrument. Self v. King, 28 Tex. 552.

"(b) If a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous. It follows that parol evidence is not admissible to render a contract ambiguous, which, on its face, is capable of being given a definite certain legal meaning. This rule obtains even to the extent of prohibiting proof of circumstances surrounding the transaction when the instrument involved, by its terms, plainly and clearly discloses the intention of the parties, or is

*so worded that it is not fairly susceptible of more than one legal meaning or construction.* Anderson & Kerr Drilling Co. v. Bruhlmeyer, 134 Tex. 574, 136 S.W.2d 800, 127 A.L.R. 1217."

This case was cited and quoted from in Remington Rand, Inc. v. Sugarland Industries, 137 Tex. 409, 153 S.W.2d 477 (1941), and Universal C. I. T. Credit Corp. v. Daniel, 150 Tex. 513, 243 S.W.2d 154 (1951). In the latter case the court said: "* * * if after applying established rules of interpretation to the contract it remains reasonably susceptible to more than one meaning it is ambiguous, but if only one reasonable meaning clearly emerges it is not ambiguous. In the latter event the contract will be enforced as written and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports. * * *" In the Remington Rand, Inc. case the court also said that even where a contract is ambiguous parol evidence is not admissible either to vary the meaning of the contract or to show that the language used was employed in a sense different from its ordinary meaning.

 Rules of construction as applied to contracts are for the purpose of enabling the court to ascertain from the language used the manner and extent to which the parties intended to be bound. It is the duty of the court to look to the entire instrument so that the effect or meaning of one part on any other part may be determined. Courts cannot make new contracts for the parties, nor can they revise a contract, while professing to construe it, so as to impose upon one party an obligation not assumed by him under the plain language of the contract. Royal Indemnity Company v. Marshall, 388 S.W.2d 176 (Tex. 1965); General American Indemnity Company v. Pepper, 161 Tex. 263, 339 S.W.2d 660 (1960); Citizens Nat. Bank in Abilene v. Texas & P. Ry. Co., 136 Tex. 333, 150 S.W.2d 1003 (1941).

 A contract is ambiguous if, after applying established rules of interpretation to the language used, it remains reasonably susceptible to more than one meaning. On the other hand, if such a contract is not reasonably susceptible of more than one meaning, the effect to be given the contract will be determined from the language of the contract alone without the aid of any other evidence and without taking into account any acts and conduct of the parties in attempting to comply with the terms of the agreement, or similar previous agreements. Pritchard & Abbott v. McKenna, 162 Tex. 617, 350 S.W.2d 333 (1961); Neece v. A. A. A. Realty Co., 159 Tex. 403, 322 S.W.2d 597 (1959); Tower Contracting Company v. Flores, 157 Tex. 297, 302 S.W.2d 396 (1957); Richardson v. Hart, 143 Tex. 392, 185 S.W.2d 563 (1945); Lone Star Gas Co. v. X-Ray Gas Co., 139 Tex. 546, 164 S.W.2d 504 (1942); Highland Farms Corporation v. Fidelity Trust Co., 125 Tex. 474, 82 S.W.2d 627 (1935).

 In the absence of evidence of a special meaning attached to the term "written through the agent" as ordinarily used in the insurance industry in transactions of this character, the words will be given their plain grammatical meaning, unless it definitely appears that the intention of the parties, as ascertained from the language of the entire instrument, would thereby be defeated. Fox v. Thoreson, 398 S.W.2d 88 (Tex.1965); Gulf, C. & S. F. Ry. Co. v. State, 97 Tex. 274, 78 S.W. 495, affirmed 204 U.S. 403, 27 S.Ct. 360, 51 L.Ed. 540.

 The definitions of the word "through" most consistent with the context in which it is used here, found in Black's Law Dictionary, 4th Edition, are: by means of, in consequence of, by reason of, by the intermediary of, and because of. The same definitions are found in Great Atlantic & Pacific Tea Co. v. City of Richmond, 183 Va. 931, 33 S.E.2d 795,

and Manufacturer's Nat. Bank of Troy v. U. S. Fidelity & Guaranty Co., 218 App. Div. 455, 218 N.Y.S. 332.

■ The contract must be construed as a whole. In determining the meaning of the sixth paragraph which provides that the agency shall be responsible for the original premiums on bonds "written through the agent," the fact that the agency was not exclusive and that, within the discretion of the company, the agent might receive commissions on bonds written by agents outside the territory must be considered. The most significant provision, however, is the first paragraph heretofore quoted. The company agreed to pay the agent commissions on the premiums for bonds "tendered by the agent to and accepted by the company." By this provision the parties have spelled out the meaning of "written through the agent."

The trial court considered the evidence that for some ten years the company had billed the agent for the original premiums on bid bonds and performance bonds written directly by the company for Martin Brothers and the agent had shown such premiums on its monthly statements to the company. He also considered the fact that by the contract between Martin Brothers and appellee for bond No. 5645004 Martin Brothers had the right to designate the agent to which the premium was to be paid by appellee and, doubtless, the further circumstances that appellants had not previously been called on to pay the premium for a bond, which they had been unable to collect. The trial court then concluded that a fact issue was raised as to the meaning placed on the phrase "written through the agent" by the actions of the parties, and submitted to the jury this issue:

"Do you find from a preponderance of the evidence that prior to the writing of the bonds made the basis of this suit,

the plaintiff, Fidelity and Deposit Company of Maryland, and defendants, Piper, Stiles & Ladd, had agreed that Martin Brothers General Contractors, Inc., would submit its applications for bonds directly to the plaintiff, but that such applications would be considered by plaintiff and defendants the same as if received by the agency and forwarded on to the plaintiff?

"In connection with this issue you are instructed that an agreement between parties may be either expressed or implied. An expressed agreement is one stated either orally or in writing by the parties. An implied agreement is one where the intention in regard to the subject matter is not stated in explicit and direct words but is gathered by implication or necessary deduction from the circumstances, the general language, or the conduct of the parties."

The jury answered this issue "We do", and the question arises as to whether parol evidence is competent to prove an agreement of the parties changing the plain meaning of words used in a written contract, the effect of which would be to impose upon one party to an unambiguous contract an obligation not assumed by him therein.

■ The parol evidence rule is not a rule of evidence, but is a rule of substantive law by reason of which evidence of oral or written expressions, prior to or contemporary with the written contract, are excluded from evidence, not because under the rules of evidence such expressions were not proved in a proper manner, but because such evidence merely constitutes proof of facts that are immaterial and inoperative. McCormick and Ray, Texas Law of Evidence, 2nd Ed., § 1061.

■ The parol evidence rule, however, does not prevent the written agreement from being later modified by a valid new agreement, though oral. Ibid, § 1671.

Appellee did not plead a subsequent agreement modifying the written contract between the parties. Its pleading, consistent with the issue submitted, was that the custom and practice of the parties for the ten year period, both prior to and subsequent to the execution of the written contract, established by implied agreement of the parties the meaning of the phrase "written through the agent" found in the contract as applied to contract bonds written for Martin Brothers as the result of direct negotiations between the company and Martin Brothers. While appellee pleaded that the agency ratified the manner in which appellee handled the application for these bonds, no issue was submitted on ratification. Even if it be assumed that the evidence established as a matter of law that appellants ratified the construction placed on the contract by appellee, the liability of appellants under the contract would not be affected. This situation would be the equivalent of establishing that the parties had agreed on a special meaning to be given the phrase used in the contract. Appellee sued for a debt due by reason of the contract, and its rights must be determined by the terms of the contract.

It is undisputed that except for the one bond on which liability was admitted by appellants, the bonds were not tendered to the company by the agency. The agency was not an intermediary in the transactions, nor a cause thereof. Appellants' motion for instructed verdict should have been sustained by the trial court.

The judgment of the Trial Court is reversed and judgment is here rendered that Fidelity and Deposit Company of Maryland have judgment against Piper, Stiles & Ladd, Charles F. Ladd and Lola Ladd in the sum of $7.00. Since this sum was tendered to appellee by appellants in its original answer, interest is allowed only from March 26, 1965 to January 31, 1967. Costs in the Trial Court and in this Court are charged to appellee.

Reversed and rendered.